## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

CARMEN LEONOR ALICEA, et al.          *
                                           *
Plaintiffs                            *          **Civil No. 97-1158(SEC)**
                                           *
v.                                    *
                                           *
PEDRO L. PARRILLA PADILLA, et al.     *
                                           *
Defendants                            *
*************************************

### ORDER

On September 29, 1998, the Court issued an opinion and order dismissing this case after concluding that the complaint was time-barred. (**Docket # 32**). Judgment of dismissal was entered pursuant to Fed. R. Civ. P. 58 and 79(a) on October 6, 1998. (**Docket # 33**). On October 16, 1998, plaintiffs timely moved for reconsideration under Fed. R. Civ. P. 59(e). (**Docket # 34**).

Plaintiffs seek reconsideration of the Court's judgment on two grounds. First, plaintiffs seek reconsideration of the judgment as to co-plaintiff María del Mar Rivera Alicea on the ground that because she was–and still is–a minor when this suit was filed, the one-year statute of limitations applicable to tort actions in Puerto Rico had not begun to run on her cause of action. It is settled that under Puerto Rico law, prescription does not run against minors. See P.R. Laws Ann. tit. 32, § 254(1) (1990); Rodríguez Aviles v. Rodríguez Beruff, 117 D.P.R. 616, 624-25 (1986); De Jesús v. Chardón, 116 D.P.R. 238, 253 (1985). The complaint, therefore, is not time-barred as it pertains to her. Accordingly, plaintiffs' motion should be, and is hereby, granted as to co-plaintiff María del Mar Rivera Alicea.

Second, plaintiffs seek reconsideration on the ground that the Court erred in disbelieving, and weighing the facts contained in, the opinion of Dr. Ana I. Colón regarding plaintiff Alicea's mental

state, which allegedly prevented her from filing this action prior to October, 1995. The relevant facts are the following.

On February 23, 1993, Alicea visited gynecologist Pedro Parrilla, complaining of pain in her left breast, arm and back. Dr. Parrilla detected a mass in Alicea's left breast and ordered her to undergo a mammography test. The mammography was performed in April, 1993, testing negative for malignancy. Upon reviewing the results on her own, Alicea decided that it was not necessary to return to Dr. Parrilla for further evaluation.

A year later, in April, 1994, Alicea went to Dr. Parrilla's office for a follow-up routine examination. This time, however, she was seen by Dr. Parrilla's associate, Dr. Rubén Mercado. Upon noticing the lump in her left breast, Dr. Mercado asked plaintiff about it. She informed him that she had had it for over a year, and that Dr. Parrilla had ordered a mammography, but that she had decided not to return because the results had been negative. Dr. Mercado nevertheless referred her to an oncologist surgeon for a biopsy. Shortly thereafter, Alicea was diagnosed with breast cancer and Alicea underwent a radical mastectomy.

After the procedure, Alicea returned to Dr. Mercado's office and informed him of what had happened. She also told him that she did not wish to continue seeing Dr. Parrilla because she believed that he had been negligent in handling her situation, and that she did not trust him anymore.

On June 24, 1996, more than two years after she was diagnosed with cancer, Alicea's counsel retained the services of a general surgeon to obtain an opinion of whether Dr. Parrilla had been negligent. Upon examining Alicea, the surgeon concluded that she had been subjected to medical malpractice and that such malpractice eventually led to the complete removal of her breast.

On September 20, 1996, Alicea sued Dr. Parrilla and others in Superior Court of Puerto Rico,

San Juan Part.  Shortly thereafter, in February, 1997, she voluntarily dismissed her state suit and

filed the instant complaint invoking diversity jurisdiction. (**Docket # 32**).  On September 19, 1997,

the federal defendants moved to dismiss the complaint for time-bar. (**Docket # 16**).  On December

31, 1997, Alicea opposed defendants' motion. (**Docket # 22**).  With her brief, Alicea submitted a

preliminary report rendered by Dr. Ana I. Colón, a clinical psychologist, on November 10, 1997.

(**Id.**, Exhibit IX).  The following facts are contained in this report.

Alicea was referred by her attorney to Dr. Colón, for the purpose of "render[ing] an opinion

as to whether [Alicea,] **in psychological terms** was capable of deciding to question the professional

judgment of a physician who told her that a lump in her left breast, which a year later proved to be

malignant, was not harmful and file legal action against him by October 1995." (**Id.** at 1) (emphasis

added).[1]  After the mastectomy, Alicea "started to work again part time in December 1994." (**Id.**,

at 4).  She also went through divorce proceedings which finally concluded in August, 1995. (**Id.**).

Thereafter, Alicea began to seek help from various support groups. (**Id.**).  In her report,[2] Dr. Colón

states:

> It is an accepted fact that two of the most stressful life events are a life threatening
> illness and divorce.  Depending upon the circumstances, recovery from either may
> take years and the help of professionals.  Ms. Alicea had to cope with both traumatic

---

[1] It should be noted that Dr. Colón had never treated Alicea before September 30, 1997, the date of their first session.  Alicea, however, had visited various other mental-health professionals (among who were at least two psychiatrists) during the time of her alleged depression.  Perhaps tellingly, Alicea did not include reports from any of these professionals with her opposition to defendants' motion to dismiss.

[2] This report was rendered after two interviews with Alicea and her mother. (**Docket # 22**, Exhibit IX).

experiences at the same time.  For her, specially being a woman who believed in the feminine roles of physical beauty or appeal, wife and mother, the loss of her breast meant not only the loss of a body part, but a loss in her self-image and self-definition. My **impression** is that she did become very depressed, manifesting many of the symptoms of a major depressive episode such as depressed mood most of the day, diminished interest or pleasure in activities, feelings of worthlessness, diminished ability to think or concentrate or indecisiveness. . . . .  The clinical consideration is that she **probably** was emotionally and cognitively impaired during this time to take action about many aspects of her life, including the decision to question the physician's opinion and undertake legal action against him.  It is also important to point out that she would not have the inclination to initially question a male authority since her personality profile suggests that she tends to be passive and agreeable without analyzing the other's behavior.

(**Id.**) (emphasis added).  Dr. Colón's conclusion was that "[d]ue to the severity of the stressors that

occurred in her life between April 1994 (being diagnosed with cancer) and August 1995 (getting

divorced) . . .[,] [Alicea] was **probably** emotionally and cognitively impaired to make a decision of

a legal suit against her physician prior to October 1995."  (**Id.**) (emphasis added).

On March 27, 1998, Dr. Colón issued another report after conducting two more interviews

with Alicea, during which certain additional tests were administered.  In this report, Dr. Colón

informs, this time more assertively:

[T]he clinical conclusion is maintained that Ms. Alicea was emotionally and cognitively impaired since the time when she was diagnosed with breast cancer in April 1994, through her divorce in August 1995 and until she started reorganizing her life last year.  During this time she was impaired to take action about many aspects of her life, including the decision to question the physician's opinion and take legal action against him prior to October, 1995.  Furthermore, the critical incident of being diagnosed with breast cancer one year after receiving a clean bill of health may have worsened her feelings of basic insecurity.

(**Docket # 30**, Attachment).

Article 40 of the Puerto Rico Code of Civil Procedure provides that if a person with a right

to initiate an action is insane at the time that the cause of action accrues, the time during which the

person remains insane is excluded from the applicable limitations period.  See P.R. Law Ann. tit. 32,

§ 254(2) (1990).  The Supreme Court of Puerto Rico has held, moreover, that is not necessary that

the party claiming this exception be declared judicially or medically insane.  He or she need only

show that the claimed "incompetency is of such a nature as to show him [or her] incapable of

administrating his [or her] own affairs or to comprehend the scope of his [or her] legal rights and

liabilities."  Torres v. W.R.A., 96 P.R.R. 634, 638 (1968).  Moreover, "[t]he party may be

[incapacitated] from the standpoint of the psychiatrist, and yet be mentally competent to understand

the scope of a particular [action]."  Rivera v. Heirs of Díaz, 70 P.R.R. 168, 175 (1949).

In our opinion and order of dismissal, we determined that the facts in this case "are simply

not enough ... to conclude that [Alicea] was incapable of filing [this] action . . . .  She was

sufficiently lucid and aware of her situation to realize and understand that Dr. Parrilla had been

allegedly negligent in handling her illness.  She was so aware of this that she went over to Dr.

Parilla's office and told his partner that she no longer wished to see them because she [did not] trust

them due to their negligence.  This is not the reaction of someone who [is] so depressed that she in

incapable of understanding the consequences of her actions." (**Docket # 32**, at 9).  We now add that

during Alicea's alleged incapacity, she went through a divorce, a proceeding which admittedly

entails "administrating . . . [one's] own affairs [and] . . . comprehend[ing] the scope of . . . [one's]

legal rights and liabilities."  Torres, 96 P.R.R. at 638.  She also began to work on a part-time basis

and sought help from various support groups during the duration of her depression.  Thus, while the

undisputed facts contained in Dr. Colón's reports may lead to the conclusion that Alicea may have

been, from a clinical standpoint, severely depressed and, therefore, emotionally and cognitively

impaired, from a legal perspective, these facts clearly show that Alicea was capable of handling her

Civil No. 97-1158(SEC)                                                                                  6

own affairs and comprehending the scope of her rights and liabilities. Therefore, from a legal

standpoint, nothing prevented her from filing suit prior to October, 1995. Accordingly, plaintiffs'

motion should be denied as to plaintiff Carmen Leonor Alicea.

    For the foregoing reasons, plaintiffs' "Motion to Alter and Amend Judgment, and for

Reconsideration Under FRCP 59(e)" (**Docket # 34**) is hereby **GRANTED IN PART** and **DENIED**

**IN PART**. The judgement entered on October 6, 1998 (**Docket # 33**), is hereby **SET-ASIDE** as it

pertains to co-plaintiff María del Mar Rivera Alicea.

        **SO ORDERED.**

    In San Juan, Puerto Rico, this 24TH day of March, 2000.

                                        SALVADOR E. CASELLAS
                                        United States District Judge

AO 72A
(Rev. 8/82)